**SO ORDERED.**

**SIGNED this 22 day of August, 2008.**



_____
**ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **MATTHEW CURTIS BLAD,** | ) | **Case No. 07-12436** |
| | ) | **Chapter 13** |
| Debtor. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION</u>**

Confirmation of this debtor's chapter 13 plan depends on whether debtor is required to treat

certain second mortgage debt set over to him in a divorce decree as property division that need only

be partially paid in chapter 13 as a general unsecured claim or as a domestic support obligation

(DSO)[1] which must be paid in full as a first priority claim under 11 U.S.C. § 507(a)(1) and §

_____

[1]  11 U.S.C. § 101(14A).

-1-

1322(a)(2).[2]  Debtor's ex-wife, Pamela Clancey ("Pamela"), objects to confirmation and contends that the mortgage debt is a DSO subject to being paid in full.[3]  An evidentiary hearing on confirmation was held July 22, 2008[4] and the Court took the matter under advisement.  The debtor appeared by David Lund.  Creditor Pamela Clancey appeared by Larry Livengood.  The chapter 13 trustee Laurie B. Williams also appeared.

Jurisdiction

Confirmation of a chapter 13 plan is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(L) and § 1334(b).

Factual Background

Debtor and Pamela married in 2002 and divorced some 14 months later in January of 2004.[5] At the time of the divorce, debtor was 29 and Pamela was 44.  Debtor worked as a policeman in Beloit and Pamela was employed as the director of the radiology department at the Cloud County Health Care Center in Concordia.

Trial on the division of property and liabilities was held in the District Court of Mitchell County on April 28, 2004.  A "Judgment Form" was entered by the state court as a result of that trial.[6]  Debtor was assigned liability for a home equity line of credit in the amount of $14,612

---

[2]  Unless otherwise indicated, all statutory references are to Title 11, U.S.C., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

[3]  Dkt. 4 (Debtor's chapter 13 plan); Dkt. 13 (Pamela's objection); Dkt. 17 (Trustee's objection).

[4]  The parties stipulated to the admission of Exhibits 1-16.

[5]  No children were born of the marriage.  Property division and remaining "issues regarding assets and liabilities" were set over for trial in April, 2004. *See* Ex. 16.

[6]  Ex. 15.

Case 07-12436   Doc# 38   Filed 08/22/08   Page 2 of 9

(referenced as the "Helock loan"). This debt was secured by a second mortgage on the marital home in Beloit purchased shortly before their marriage.[7] The state court judge allocated this debt to debtor, explaining that this obligation was in "lieu of maintenance," in light of Pamela's "heavy debt loan [sic]." At page 5 of the Judgment Form, the state court stated that the "Helock loan is awarded to respondent in lieu of maintenance under the court's inherent authority to make a just and equitable division of property and debt."[8] The state court entered judgment in favor of Pamela and ordered that she be held harmless from this debt. The state court also found that "[s]ubstantially all of the current balance on the Helock loan is the result of purchases by petitioner [debtor]" and that the loan proceeds were used "to pay off petitioner's debt that he brought to the marriage" and financed debtor's purchase of a 2000 Chevrolet extended cab pickup.[9]

The Judgment Form addressed a number of factors to be considered by a state court in determining how to make a division of the parties' property under KAN. STAT. ANN. § 60-1610(b)(1) (2007 Supp.).[10] The state court considered the ages of the parties, the length of the marriage, property they brought to the marriage, their respective earnings and earning capacities, the source of and time they acquired marital property, their respective family ties and obligations,

---

[7] The state court found that "the parties purchased a house . . . for approximately $124,000.00. To finance the purchase [Pamela] paid the down payment of $5,000.00 plus an additional $22,000.00 at the time of the loan closing. [Pamela] borrowed approximately $97,000 to complete the purchase of the come." Ex. 15, p. 3. The evidence at the confirmation hearing revealed that debtor was not a signatory on the house note.

[8] Although the record is silent, Pamela's counsel represented that she made no formal request for maintenance in the divorce case.

[9] Ex. 15, pp. 1-2, 4.

[10] The Judgment Form identified these as "Property Division Criteria." *See* Ex. 15, p. 1. The statute refers to the criteria for making the "division of property."

-3-

the allowance of maintenance, the dissipation of assets and other factors.

In addition to the factual findings made in the Judgment Form, it is apparent from the evidentiary record in this case that Pamela earned much more money and was much better at managing it than debtor. It appears that debtor acquired a boat, a motorcycle, and other "toys" notwithstanding Pamela's misgivings about his ability to pay for them. Indeed, he had substantial credit card debt at the time of the marriage and did not even sign the note secured by the mortgage in controversy here. According to Pamela, debtor did not contribute to the purchase of the marital home. The monthly payments on the first mortgage on the marital home were $932 and were $350 on the Helock loan.[11] When Pamela sold the marital home after the divorce, she paid off the Helock loan and now seeks this Court's finding that debtor's obligation to hold her harmless is in fact in the nature of maintenance and thus, a DSO entitled to payment in full.

Analysis

Even though this case is governed by the Bankruptcy Code as amended by BAPCPA, the Court discerns no change in the law for determining whether an obligation to a former spouse is in the nature of maintenance or support.[12] Thus, the Court will look to the well-developed case law in this Circuit. Pamela bears the burden of proving by a preponderance of the evidence that the parties

---

[11] According to debtor, he made every payment on the Helock loan prior to the divorce except for the January and February 2004 payments. Pamela testified that she stepped in and made some of the monthly payments when debtor missed paying them.

[12] BAPCPA changed the former alimony, support and maintenance discharge exception, § 523(a)(5), to a discharge exception for DSOs, as newly defined by § 101(14A). That definition includes debts "in the nature of alimony, maintenance or support . . . without regard to whether such debt is expressly so designated." The former § 523(a)(5) exception also required the debt to be "actually in the nature of alimony, maintenance, or support."

-4-

intended the obligation as support and that the obligations was, in substance, support.[13]

Whether the nature of the debt is one for maintenance or support is a question of federal bankruptcy law.[14] The critical inquiry in determining whether the debtor's obligation to former spouse is in substance maintenance or support is the function served by the obligation at the time of the divorce which may be determined by considering the parties' relative financial circumstances at the time of the divorce.[15] This Court is not bound by the state court judge's characterization or label given to the obligation.[16] While that characterization may be persuasive if the four corners of the Judgment Form support a conclusion that the award is in fact in the nature of maintenance, the Court is permitted to look beyond the language of the document to the shared intent of the parties and the substance of the obligation, even where the document is unambiguous.[17]

Here, an examination of the document indicates the state court judge applied the statutory property division factors in determining whether to set over the Helock loan obligation to debtor. He noted that the marriage was of short duration and produced no minor children, and that the parties had disparate income capabilities, a disparity in Pamela's favor. Nevertheless, he set the second mortgage debt over to debtor and characterized it as "maintenance" because of Pamela's heavy debt load – presumably her $932 house payment obligation. It appears that debtor also had

---

[13] *In re Sampson*, 997 F.2d 717, 723 (10th Cir. 1993).

[14] *Id.* at 721. *In re Goin*, 808 F.2d 1391, 1392 (10th Cir. 1987); *In re Busch*, 369 B.R. 614, 622 (10th Cir. BAP 2007).

[15] *Sampson,* 997 F.2d at 725-26 (Stating that "if the obligation effectively functions as the former spouse's source of income at the time of the divorce, it is, in substance, a support obligation."); *Busch,* 369 B.R. at 622.

[16] *Goin,* 808 F.2d at 1392; *Busch*, 369 B.R. at 622.

[17] *Sampson,* 997 F.2d at 722; *Goin*, 808 F.2d at 1392.

a heavy debt load from credit cards and a car loan. He earned approximately $20,000 less than Pamela in his job as a Beloit city policeman. Pamela brought into the marriage a pension plan, a 401(k) account, an investment account, and an annuity collectively valued at nearly $150,000.

Looking beyond the four corners of the document, the Court applies the four *Goin* factors to the Helock obligation assigned to debtor:

> (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support.[18]

The Court's review of the parties' circumstances at the time of the divorce in 2004 lead it to conclude that only one of the factors, at best, applies.

**Factor No. 1:** The Judgment Form does not otherwise provide for maintenance or support to Pamela. It does not appear that the evidentiary hearing in 2004 dealt with support issues and Pamela's counsel conceded that no formal request for maintenance was made. As for Pamela's need, she had substantially greater income than debtor did at the time of the divorce, but also substantially greater expenses. In 2004, Pamela's adjusted gross income was $62,105 while debtor's was $35,000. She had a minimum of $4,673 in monthly expense before the home equity payment; he had $3,724. She had a surplus of about $500 a month while debtor had an $800 deficit. The first *Goin* factor weighs against the award being maintenance.

---

[18] 808 F.2d at 1392-93. *See also, In re Robinson*, 113 B.R. 687, 689 (D. Colo. 1990), *aff'd* 921 F.2d 252 (10th Cir. 1990) (The same considerations come into play where the divorce court adjudicates the parties' rights and responsibilities as where the parties enter into a settlement agreement).

**Factor No. 2:** The parties had no children born of the marriage and the imbalance of income rests in Pamela's favor. The second *Goin* factor weighs against the Helock obligation allocated to debtor being maintenance.

**Factor No. 3:** The Judgment Form contemplated that the Helock loan be paid directly to Pamela and the Court entered a judgment against debtor in the requisite amount.[19] No periodic payments were required. This *Goin* factor weighs in favor of the payment being in the nature of maintenance.

**Factor No. 4:** The Judgment Form contains no reference to the termination of liability on the Helock loan in the event of Pamela's death or remarriage. This fourth *Goin* factor weighs against the payment being in the nature of support or maintenance.

In addition to the *Goin* factors, the Court notes that the Judgment Form itself is not totally free of ambiguity. While the state court clearly labeled the Helock obligation to be in lieu of maintenance, other provisions of the Judgment Form strongly suggest it was in fact in the nature of a property equalization payment, designed, as debtor contends, to restore the parties to the position they were in prior to the marriage. The Judgment Form clearly references the statutory criteria for making a division of property. The only awards set forth in the Judgment Form were the division of property and liabilities between debtor and Pamela. Indeed, the language the state court utilized in the Judgment Form is inherently inconsistent: "The amount owed by petitioner on the Helock loan . . . is awarded to [Pamela] in lieu of maintenance under the court's inherent authority *to make a just*

---

[19] At the time of the state court hearing regarding the division of assets and liabilities it was anticipated that Pamela would subsequently sell the marital home in Beloit. As the evidence adduced at the confirmation hearing showed, Pamela applied the sale proceeds to pay off the Helock loan, leaving only debtor's obligation to Pamela under the Judgment Form.

-7-

*and equitable division of property and debt.*[20]  In short, this Court concludes that the assignment

of the Helock obligation to debtor, notwithstanding its maintenance label, did not function as an

award of support or maintenance.

This is not to say that the allocation of debt can never be in the nature of support.  The Court

is cognizant of two decisions where a second mortgage obligation allocated to the debtor was

determined to be in the nature of support.[21]  However, in both of those cases, the financial

circumstances of the former spouse at the time of the divorce differ significantly from Pamela's

situation here.  Based upon the state court's determination that the Helock loan funded purchases

solely by the debtor, this Court concludes that the second mortgage obligation was simply debt

incurred by debtor and that if he was going to retain the personal property purchased with the loan

proceeds, he should also bear the attendant debt burden.

Accordingly, the Court concludes that, as a matter of federal law, Pamela failed to meet her

burden of proving the substance of the Helock debt allocated to debtor was in the nature of

maintenance or support.  The Court concludes that the award is in fact in the nature of property

division equalization and, as such, need not be repaid as a first priority domestic support obligation.

If the debtor completes his plan and makes all of the payments required thereunder, his obligation

may be discharged under § 1328(a).  Pamela's objection to confirmation is OVERRULED and

Debtor's plan should be confirmed.  The trustee is directed to prepare the appropriate confirmation

---

[20]  Ex. 15, p. 5 (Emphasis added).

[21]  *See Busch, supra* at 623 (allocating debt for second mortgage to debtor allowed
debtor's child to remain in the marital home until the age of 18) and *In re Robinson,* 921 F.2d
252 (10th Cir. 1990) (former spouse had no source of income other than the support paid by
debtor and no work experience other than debtor's family dry-cleaning business awarded to
debtor).

order.

# # #